United States Court of Appeals
For the Eighth Circuit
No. 25-2895

United States of America

*Plaintiff - Appellee*

v.

Amir Kalomo Mulamba

*Defendant - Appellant*

————————

Appeal from United States District Court
for the District of South Dakota - Southern

————————

Submitted: June 9, 2026
Filed: August 12, 2026

————————

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

————————

GRUENDER, Circuit Judge.

Law enforcement received a report that Amir Mulamba had offered a minor vape pens in exchange for sex. After they seized and searched his phone, they found explicit images of a minor and charged him with production of child pornography. *See* 18 U.S.C. § 2251(a), (e). Mulamba moved to suppress, arguing that law enforcement had violated the Fourth Amendment by seizing his phone without a warrant and by searching his phone pursuant to an invalid warrant. A magistrate

judge recommended denying Mulamba's motion, and the district court agreed.[1] Mulamba conditionally pleaded guilty to production of child pornography, *see id.*, reserving his right to appeal the denial of his motion to suppress. He now appeals, and we affirm.

## I. Background

On June 21, 2021, a mother, A.R., reported to the Sioux Falls Police Department that an unknown man had offered her sixteen-year-old daughter, E.R., vape pens in exchange for sex. Officer Robert Olson visited A.R.'s home to interview A.R. She recounted that the night before, she had seen E.R. speaking with someone in a dark gray car. Suspicious, A.R. had recorded the vehicle's license plate number, and, suspecting that E.R. had been speaking to older men, A.R. searched through E.R.'s messages on the social media app, Snapchat. A.R. told Officer Olson that she saw that a Snapchat user who went by the name "Amiro Fenomeno" had solicited E.R. for sex in exchange for vape pens. A.R. believed that the person in the dark gray car was Amiro Fenomeno.

Officer Olson then interviewed E.R., who admitted that Fenomeno had given her a disposable vape pen the night before. E.R. had given her address to Fenomeno over Snapchat. E.R. described Fenomeno as a black, twenty-five-year-old man with "a little bit of a beard." E.R. stated that Fenomeno had not asked her for anything in return for the vape pen, but she also stated that when she went to retrieve the vape pen from him, he asked her "to make out with him" and to get in his car. E.R. stated that Fenomeno had said that he wanted her "to have [his] babies" and to be his surrogate, and that he knew she was sixteen years old. During E.R.'s interview, she received a phone call from Fenomeno. A.R. answered the phone and told Fenomeno that she had notified the police. Fenomeno then started calling E.R.'s phone repeatedly.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting the report and recommendations of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

Officer Olson reviewed E.R.'s Snapchat messages, which included messages from Fenomeno saying, "I gotta take you out," and "You like to moan." Fenomeno had also deleted some of the Snapchat messages that he had sent to E.R. earlier that day. Officer Olson also ran the license plate number that A.R. had provided and found that it belonged to a car registered to Mulamba.

The next day, A.R. was interviewed by Homeland Security Investigations Special Agents Andrew Jacob and Craig Scherer. A.R. gave them permission to conduct a forensic examination of E.R.'s phone. That same day, Detective Seth Meier from the Sioux Falls Police Department was assigned to investigate the case. Detective Meier reviewed Officer Olson's report about the case. Detective Meier then looked up Mulamba's driver's license and determined that the license photo matched photos that E.R. had provided from Fenomeno's Snapchat account.

Later that week, on June 25, Agent Jacob and Detective Meier visited Mulamba's house to interview him. When they arrived, they saw a vehicle parked outside that matched the one A.R had described and that had the same license plate number that A.R. had provided. During the interview, Mulamba explained that he drove the vehicle but that other members of his family sometimes did as well.

Detective Meier asked Mulamba if he used dating apps. Mulamba replied that he was on Tinder, and Agent Jacob asked Mulamba to get his phone. Mulamba left and returned about three minutes later with his phone. As Mulamba showed Agent Jacob and Detective Meier his Tinder account, they saw that he had matched with two individuals who had E.R.'s first name, which we will denote as "E." Agent Jacob asked if Mulamba had ever met up with either individual, and Mulamba replied that he had not. Agent Jacob then asked Mulamba to open his Snapchat account, and Agent Jacob confirmed that Mulamba's Snapchat username was "Amiro Fenomeno." Mulamba stated that his Snapchat connections included multiple accounts beginning with the name E.

As the conversation turned to Mulamba's Snapchat account, Mulamba adjusted his posture such that Agent Jacob could no longer observe Mulamba's phone screen. Agent Jacob then suggested that Mulamba consent to a search of his phone. After attempting to persuade Mulamba to turn over his phone, Agent Jacob observed that Mulamba appeared to be deleting items from the phone. Agent Jacob asked Mulamba what he was deleting. Mulamba replied that "since I've been talking to you, you've just said [E], [E]. So I don't know if you're looking for [E]. It must be, if you are going that direction." Agent Jacob again asked Mulamba what he was deleting, and Mulamba replied, "Stuff that I don't want—I don't like." Agent Jacob repeatedly asked Mulamba to stop deleting items from his phone.

Agent Jacob stepped away from the conversation to call an Assistant United States Attorney to ask whether exigent circumstances existed to seize Mulamba's phone. The AUSA advised Agent Jacob that he could seize the phone. Agent Jacob returned to the conversation and stated that, because he would be applying for a search warrant, he was forcing Mulamba to turn over his phone. After Mulamba asked multiple times whether Agent Jacob had received a search warrant, Agent Jacob and Detective Meier both answered, "Yep."[2] Agent Jacob explained that he wanted to seize the phone to preserve evidence while he applied for a search warrant. Mulamba handed over the phone. Agent Jacob then suggested that if Mulamba consented to the search, he could receive the phone back that day, but that if Mulamba required Agent Jacob to obtain a warrant, it would take longer to return the phone. Mulamba signed a consent for a search, and Agent Jacob and Detective Meier then departed with the phone.

A few days later, on June 29, Agent Jacob and Agent Scherer interviewed E.R. She again recounted her interactions with Fenomeno, including that he knew she was sixteen, although this time she also noted that he had asked her to have sex.

---

[2]Agent Jacob and Detective Meier both later testified that they did not intend to mislead Mulamba. Agent Jacob testified he believed Mulamba was asking if they had received permission to obtain a warrant, and Detective Meier testified that he believed Mulamba was asking if they were going to get a warrant.

She explained that she and Fenomeno had initially planned to meet on June 19, not June 20, but that Fenomeno had told her he could not make it then because he had "other appointments," which E.R. understood to mean that he was "prostituting other females and having sex with them." She stated that when she told Fenomeno that she did not have any money for vape pens, Fenomeno replied that he "would figure out another payment method." She also stated that when she retrieved the vape pen from Fenomeno, he told her that he had more vape pens, but "would only give [her] those vape pens the next time they hung out." She stated that Fenomeno had asked her to show him her breasts, but that she refused. She later noted that she had only ever sent nude photos to a teenage boy whom she liked.

In mid-July, Agent Jacob applied for a warrant to search Mulamba's phone. Although Agent Jacob already had Mulamba's signed consent, he wanted to "button up his search." In the warrant affidavit, Agent Jacob explained that he had probable cause to believe that Mulamba's phone contained evidence of sexual exploitation of children and child pornography. Agent Jacob also described A.R.'s initial complaint to law enforcement, the initial interviews with A.R. and E.R., his interview with Mulamba, his follow-up interview with E.R., the messages on E.R.'s Snapchat account, and Mulamba's attempts to delete items from his phone.

Agent Jacob left a couple of details out of the affidavit. Although Agent Jacob noted that Mulamba had signed a consent for a search, Agent Jacob omitted that Mulamba had done so only after Agent Jacob and Detective Meier inaccurately told him that they had a warrant. And Agent Jacob did not include E.R.'s statement that she had only ever sent nude photos to another teenager, later testifying that he had doubts about her credibility. Agent Jacob also misstated how long it took Mulamba to retrieve his phone, saying that it took Mulamba nine minutes when it only took three. Agent Jacob later testified that he was only attempting to convey that it took Mulamba several minutes to obtain the phone.

Based on Agent Jacob's affidavit, a magistrate judge issued a search warrant for Mulamba's phone. When searching Mulamba's phone, Agent Jacob found child

sexual abuse material, including sexually explicit videos of a minor whom law enforcement identified as H.N.B., a fourteen-year-old girl living in Utah. After seeing this material on Mulamba's phone, Agent Jacob obtained other warrants to search Mulamba's Snapchat, Gmail, and Amazon accounts.

Mulamba was charged with one count of production of child pornography for his conduct related to H.N.B. *See* 18 U.S.C. § 2251(a), (e). Mulamba filed a motion to suppress evidence obtained from the search warrants. The magistrate judge recommended that the district court deny the motion, and the district court adopted the magistrate judge's report and recommendations. Mulamba conditionally pleaded guilty to production of child pornography, *see id.*, reserving his right to appeal the denial of his motion to suppress, *see* Fed. R. Crim. P. 11(a)(2). Mulamba now appeals, raising two issues. First, Mulamba claims that Agent Jacob violated the Fourth Amendment by seizing his phone without a warrant. Second, Mulamba brings a challenge under *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the warrant Agent Jacob obtained to search his phone was invalid. Mulamba argues that evidence obtained due to the seizure and search of his phone should be suppressed.

## II. Discussion

We first address whether Agent Jacob and Detective Meier's seizure of Mulamba's phone was reasonable under the Fourth Amendment. We next address whether Agent Jacob had a valid warrant to search Mulamba's phone.

## A. The Seizure

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Ordinarily, "seizures of personal property are unreasonable . . . unless accomplished pursuant to a judicial warrant issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (citation modified). But there are exceptions to this rule, such as where "officers have probable cause to seize the property and exigent circumstances

require immediate seizure." *United States v. Shrum*, 59 F.4th 968, 972 (8th Cir. 2023).

Here, the district court determined that it was reasonable for Agent Jacob and Detective Meier to seize Mulamba's phone even though they had not first obtained a warrant. The district court explained that Agent Jacob and Detective Meier had probable cause to believe that Mulamba's phone contained evidence that he had committed a crime. The district court also explained that there were exigent circumstances that justified seizing Mulamba's phone because a reasonable officer would have believed that Mulamba was deleting evidence from it.

We review the district court's findings of historical fact for clear error and review *de novo* its "ultimate conclusion" whether, "when viewed from the standpoint of an objectively reasonable police officer," those historical facts established probable cause and exigent circumstances. *See United States v. Ball*, 90 F.3d 260, 262 (8th Cir. 1996). We conclude that (1) Agent Jacob and Detective Meier had probable cause to believe that Mulamba had attempted to solicit E.R. to engage in a commercial sex act, *see* 18 U.S.C. §§ 1591, 1594, and (2) exigent circumstances existed to justify the immediate seizure of Mulamba's phone. Thus, seizing Mulamba's phone did not violate the Fourth Amendment.

### i. Probable Cause

"Probable cause exists when, viewing the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (citation modified). We evaluate probable cause from the perspective of "a reasonable officer, confronted with the facts known to the officer at the time of the [seizure]." *See United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006).

By the time that Agent Jacob and Detective Meier seized Mulamba's phone, they could have reasonably believed that there was a fair probability that it contained

evidence of a crime, *see United States v. Meyer*, 19 F.4th 1028, 1032 (8th Cir. 2021), specifically, that Mulamba had knowingly attempted to solicit E.R. to engage in a commercial sex act while knowing she was under eighteen, *see* 18 U.S.C. § 1591 (prohibiting sex trafficking of children); § 1594 (prohibiting attempted violations of § 1591); *see, e.g., United States v. Wolff*, 796 F.3d 972, 975 (8th Cir. 2015) (per curiam).[3] Agent Jacob and Detective Meier had this probable cause for several reasons.

To begin, they had Officer Olson's report, which documented his interviews with A.R. and E.R. A.R. had told Officer Olson that Fenomeno had solicited E.R. on Snapchat for sex in exchange for vape pens and that E.R. had spoken with someone in a dark gray car whom A.R. believed to be Fenomeno. A.R.'s statement contained several "indicia of reliability." *See United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008). It was not anonymous; indeed, A.R. gave it in-person to Officer Olson. *See id.* (explaining that a "known informant" is more reliable than an "anonymous" informant and that in-person statements allow officers to assess an informant's veracity). It was also a detailed eyewitness account; A.R. observed and noted the car's appearance and license plate number and what Mulamba had offered to E.R. over Snapchat in exchange for sex. *See United States v. Robertson*, 39 F.3d 891, 893 (8th Cir. 1994) (detailed, firsthand descriptions are entitled "to greater weight than might otherwise be the case"). Agent Jacob and Detective Meier could also corroborate many details in A.R.'s statement. "The corroboration of even innocent, minor details can support a finding of probable cause." *Stevens*, 530 F.3d at 719. Before arriving at Mulamba's house, Detective Meier ran the license plate that A.R. had provided and saw that it belonged to a car registered to Mulamba. When approaching Mulamba's house, Agent Jacob and Detective Meier saw a vehicle parked outside that matched the one A.R had described. And Detective Meier observed that Mulamba's driver's license photo appeared to match photos that E.R. had provided from Fenomeno's Snapchat account.

_____

[3]Mulamba notes that E.R. was sixteen, the age of consent in South Dakota. Nevertheless, attempting to sex traffic a sixteen-year-old violates federal law. *See* 18 U.S.C. §§ 1591, 1594.

Mulamba argues that A.R.'s statement could not be the basis for probable cause because Agent Jacob and Detective Meier had other evidence that contradicted it. But Mulamba overstates the alleged contradictions. First, Mulamba argues that although A.R. stated that Fenomeno asked E.R. to have sex, E.R. stated that Fenomeno had asked to make out. This is hardly a contradiction; a reasonable officer could believe that Mulamba had asked E.R. to make out and also to have sex. Indeed, E.R. also stated that Fenomeno had asked her to have his babies and to be his surrogate.[4] If anything, E.R.'s statement corroborates A.R.'s statement. E.R. confirmed that an adult man had driven to her home, had given her a vape pen, and had been sending her salacious messages over Snapchat, as A.R. stated. Second, Mulamba argues that, contrary to A.R.'s statement, there were no Snapchat messages between E.R. and him where he requested sex in exchange for vape pens. But Agent Jacob and Detective Meier could have reasonably believed that Mulamba had made this request in one of the messages that he had deleted, or that A.R. had understood Mulamba's messages, taken together, to make such a request. A.R.'s statement was "sufficiently credible and reliable" to contribute to a probable cause finding. *See Mays*, 993 F.3d at 615.

Further, we need not decide whether A.R.'s statement, on its own, was sufficient for a probable cause finding because Agent Jacob and Detective Meier also had other evidence contributing to this finding. For one, they had E.R.'s statement that Fenomeno, while knowing she was sixteen, had given her a vape pen, asked to make out and to get in his car, and asked her to have his babies and to be his surrogate. They knew that Mulamba matched E.R.'s photos of Fenomeno and that Mulamba went by "Amiro Fenomeno" on Snapchat. They also knew that Fenomeno had messaged E.R. "I gotta take you out" and "You like to moan."

And then there were Mulamba's evident attempts to delete items from his phone related to E.R. A suspect's attempts to delete evidence can contribute to a

_____

[4]Also, E.R. eventually did report that Fenomeno had asked her to have sex, but because she did so only after the seizure, this fact is not relevant to whether Agent Jacob and Detective Meier had probable cause for the seizure.

-9-

probable cause finding. *See United States v. Mayo*, 627 F.3d 709, 714 (8th Cir. 2010) (noting that a suspect's "nervous behavior" can contribute to probable cause); *United States v. McKinney*, 980 F.3d 485, 496 (5th Cir. 2020) ("Attempts to hide or discard contraband can contribute to suspicion or probable cause."). When Agent Jacob and Detective Meier questioned Mulamba about his Snapchat account, Mulamba adjusted his posture in a way that prevented Agent Jacob from seeing his phone screen. *United States v. Reiner Ramos*, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987) (noting that "furtive gestures" are "relevant to the existence of probable cause"). Mulamba then stated that it appeared the officers were looking for something related to "[E]" and admitted that he was deleting items from his phone. Mulamba argues that he was simply attempting to prevent others from seeing items on his phone that were embarrassing to him, but "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts," *see Meyer*, 19 F.4th at 1033. A reasonable officer could believe Mulamba was deleting his messages with [E], another factor suggesting that his phone contained evidence of a crime. Indeed, Mulamba conceded at oral argument that his admission to Agent Jacob and Detective Meier that he was deleting items from his phone "is a factor towards [a] probable cause analysis."[5]

Confronted with these facts, Agent Jacob and Detective Meier could have reasonably believed that there was a fair probability that Mulamba's phone contained evidence that he had attempted to sex traffic E.R. *See* 18 U.S.C. §§ 1591, 1594. Thus, Agent Jacob and Detective Meier had probable cause to seize his phone.

---

[5]The dissent, in arguing that "the act of deleting some personal information alone" does not establish probable cause, *see post*, at 15, attacks a holding that we do not make here. After all, our inquiry is whether the *totality* of the circumstances established probable cause. *See Mays*, 993 F.3d at 614. Here, we express simply that Mulamba's attempts to delete items off his phone—after Agent Jacob and Detective Meier had asked about his Snapchat account and he had noted that they seemed to be looking for something related to "[E]"—are among the many circumstances that, together, established probable cause for the phone seizure.

## ii. Exigent Circumstances

Exigent circumstances exist where "a reasonable, experienced police officer would believe" that somebody "will imminently destroy evidence." *See United States v. Ramirez*, 676 F.3d 755, 760 (8th Cir. 2012) (citation modified). That was the case here. Mulamba had adjusted his posture such that Agent Jacob could no longer see his phone. After observing that Mulamba appeared to be deleting items from his phone, Agent Jacob asked him what he was deleting. Mulamba replied that it seemed like Agent Jacob and Detective Meier were looking for something related to "[E]" and then admitted that he was deleting items from his phone. By that point, Fenomeno had already deleted some of his messages with E.R. Knowing these facts, a reasonable, experienced officer would believe that Mulamba was imminently about to destroy evidence of his conduct towards E.R. *See United States v. Evans*, 178 F.4th 416, 421 (8th Cir. 2026); *Meyer*, 19 F.4th at 1033. Thus, exigent circumstances existed justifying the seizure of Mulamba's phone. *See Ramirez*, 676 F.3d at 759-60.

Because there existed probable cause and exigent circumstances, it was reasonable for Agent Jacob and Detective Meier to seize Mulamba's phone.

## B. The Search

Mulamba also brings a "*Franks* challenge" to invalidate the warrant Agent Jacob obtained to search his phone. *See Franks*, 438 U.S. at 171. To prevail, Mulamba must show that: (1) Agent Jacob "knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant"; and (2) "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *See Briscoe v. St. Louis Cnty.*, 172 F.4th 996, 1006 (8th Cir. 2026). After holding a *Franks* hearing, the magistrate judge rejected Mulamba's *Franks* challenge. The district court then overruled Mulamba's objection to the magistrate judge's determination. "[W]e review the

district court's findings of fact for clear error and its legal conclusions de novo." *United States v. Johnson*, 75 F.4th 833, 841 (8th Cir. 2023).

Mulamba argues that Agent Jacob made two omissions and one misrepresentation on the warrant affidavit. First, Agent Jacob omitted that Mulamba had consented to a search of his phone only after Agent Jacob and Detective Meier inaccurately said that they had a warrant. Second, Agent Jacob omitted E.R.'s statement that she had only sent nude pictures of herself to another teenager. And third, Agent Jacob stated that it took Mulamba nine minutes to retrieve his phone, when it only took three.

We need not analyze whether Agent Jacob made these alleged errors "knowingly and intentionally, or with reckless disregard for the truth." *See Briscoe*, 172 F.4th at 1006. This is because, as the district court recognized, even after correcting for these alleged errors, Agent Jacob's affidavit would still "establish probable cause" that Mulamba's phone contained evidence of attempted sex trafficking. *See id.*; 18 U.S.C. § 1594.[6]

Agent Jacob's affidavit presents most of the facts we relied on in Section II(A)(i) to find probable cause for the phone seizure. The affidavit recounts A.R.'s statement that a man had offered E.R. a vape pen in exchange for sex and that E.R. had met with the driver of a dark gray car—a car that was registered to Mulamba and that matched the one parked outside of his home. The affidavit also recounts E.R.'s statement that she had met with Fenomeno to obtain a vape pen; that Fenomeno had asked her to make out, to be his surrogate, and to get in his car; and that he knew that she was sixteen. The affidavit describes Fenomeno's Snapchat

---

[6]Although the affidavit does not specifically mention attempted sex trafficking, *see* 18 U.S.C. § 1594, "[i]t is not necessary for an affidavit to include the name of the specific crime alleged," *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). Instead, the question is whether the affidavit alleges facts that "support a finding of probable cause to believe that [Mulamba's] actions constituted criminal conduct." *See id.* Agent Jacob's affidavit does just that.

messages to E.R., "I want you to have my babies" and "you like to moan," and adds that Mulamba went by "Amiro Fenomeno" on Snapchat. And the affidavit describes Mulamba's attempts to delete items from his phone.

The affidavit also includes some additional facts. The affidavit notes that Mulamba informed Agent Jacob that he was the only person who had used his car the night E.R. had spoken to the man driving it. The affidavit notes that E.R. said she believed Fenomeno might have been prostituting other females, given the content of her messages with him. The affidavit also notes that E.R. said that Fenomeno had asked her to show him her breasts and had offered her additional vape pens upon further meetings. And the affidavit notes that Mulamba matched E.R.'s physical description of Fenomeno. All told, "the unchallenged statements in [Agent Jacob's] affidavit establish 'a fair probability'" that Mulamba's phone contained evidence of attempted sex trafficking, *see United States v. Kucharo*, 127 F.4th 1152, 1160 (8th Cir. 2025), and therefore the affidavit established probable cause.

None of the affidavit's alleged omissions or misstatements lead us to second-guess this conclusion. First, Mulamba's reason for consenting to the phone search does not matter; Agent Jacob discovered the facts he alleged in the affidavit before searching Mulamba's phone. Second, regardless of whether Mulamba obtained nude photos from E.R., the affidavit establishes probable cause to believe he attempted to sex traffic her in violation of 18 U.S.C. § 1594. And third, although it took Mulamba only three minutes, not nine minutes, to retrieve his phone, he still furtively deleted items on his phone that were seemingly related to E.R., as the affidavit describes.

Thus, Mulamba's *Franks* challenge fails.

-13-

### III. Conclusion

We therefore reject Mulamba's argument that evidence obtained due to the seizure and search of his phone should be suppressed. We affirm.

KELLY, Circuit Judge, dissenting.

I disagree that the officers had probable cause to seize Mulamba's phone. Though we do not defer to officers' actual assessments of the evidence in our probable cause analysis, see Bowden v. Meinberg, 807 F.3d 877, 881 (8th Cir. 2015) (citing Warren v. City of Lincoln, 864 F.2d 1436, 1439–41 (8th Cir. 1989)), it is telling that even the officer who led Mulamba's interview testified he did not believe they had probable cause to seize Mulamba's phone before that interview. I agree with him. Law enforcement had no documentary evidence showing Mulamba had offered E.R. anything in exchange for sex, Mulamba had no relevant criminal history, and E.R.—the purported victim—told officers that Mulamba did not ask her for anything in return for the vape he gave her. The only person who claimed Mulamba offered to pay E.R. with vapes for sex was E.R.'s mother, A.R. Yet another of the officer's reports said only that A.R *thought* that [E.R.] had agreed to sexual favors in exchange for the disposable vape pen" (emphasis added)—a contradiction that likely influenced the officer's assessment of probable cause.

That leaves the interview with Mulamba, which, in my view, did not provide sufficient additional information to satisfy probable cause. Even if Mulamba acted nervously when he stopped allowing the officers to view his phone and began deleting information, I disagree that these facts are sufficient to support probable cause under the totality of the circumstances.[7] A person in a consensual interview

---

[7]Mayo and McKinney do not support a finding of probable cause here. In United States v. Mayo, 627 F.3d 709, 714 (8th Cir. 2010), there were several "suspicious circumstances," only one of which was nervousness, that gave officers probable cause under the automobile exception. In United States v. McKinney, 980 F.3d 485, 496 (5th Cir. 2020), the court acknowledged that "[a]ttempts to hide or

-14-

with law enforcement may choose to end the interview at any time. <u>Webster v. Westlake</u>, 41 F.4th 1004, 1012 (8th Cir. 2022) ("[C]itizens enjoy the right to refuse or terminate voluntary encounters with police." (citing <u>United States v. Mendenhall</u>, 446 U.S. 544, 553 (1980))). And if they voluntarily share private information, they may stop doing that, as well. <u>Riggs v. Gibbs</u>, 923 F.3d 518, 523 (8th Cir. 2019) ("Once given, [however,] consent to search may be withdrawn." (alteration in original) (quoting <u>United States v. Sanders</u>, 424 F.3d 768, 774 (8th Cir. 2005))).

Mulamba does not dispute that he began deleting information from his phone, but without preexisting probable cause, this conduct is not per se indicative of criminal activity. As the Supreme Court has recognized, cell phones "are in fact minicomputers" that "carry a cache of sensitive personal information" from which "[t]he sum of an individual's private life can be reconstructed[.]" <u>Riley v. California</u>, 573 U.S. 373, 393–95 (2014). "[Cell phones] could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." <u>Id.</u> at 393. To conclude that the act of deleting some personal information alone signals a "fair probability" that the user possesses "contraband or evidence of a crime" would be to ignore the practical reality of the role cell phones play in daily life and the wide-ranging information they hold. <u>See United States v. Shrum</u>, 59 F.4th 968, 972 (8th Cir. 2023) (probable cause standard). Moreover, characterizing Mulamba as "deleting evidence" skips over the prerequisite finding: that the deleted content is "evidence" at all. I agree that officers need not "rule out a suspect's innocent explanation for suspicious facts," <u>United States v. Meyer</u>, 19 F.4th 1028, 1032 (8th Cir. 2021), but a person's statement during a consensual interview that he is deleting nude images of himself, combined with a refusal to allow officers to watch his phone screen as he did so, is not enough for probable cause.

---

discard *contraband* can contribute to suspicion or probable cause," (emphasis added), yet still found the officers lacked even reasonable suspicion to believe the defendant was engaged in criminal activity. And here, as addressed above, there was insufficient evidence to show that what Mulamba was deleting was contraband.

Because the totality of the circumstances did not give rise to a "fair probability that contraband or evidence of a crime [would] be found in [Mulamba's phone]," I would hold that the officers did not have probable cause to seize it. And because the parties agree that, if the seizure was invalid, the subsequent search warrant would also be invalid as fruit of the poisonous tree, I would reverse the denial of the motion to suppress, vacate Mulamba's conviction, and remand to the district court to conduct further proceedings, as appropriate.

_____